ORIGIN...

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x
                            :

UNITED STATES OF AMERICA        :

           - v. -       :

SAMUEL GOLDBERGER,        :
    a/k/a "Benzi,"
JUDAH YABLONSKY          :
    a/k/a "Yidle," and
SAMUEL ASHKENAZI,        :
    a/k/a "Haim Veinberg,"
    a/k/a "Joseph,"        :
    a/k/a "Sam,"
                            :

        Defendants.      :

- - - - - - - - - - - - - - - - - -x

**INDICTMENT**



12 Cr. CRIM598

## COUNT ONE

(Conspiracy To Defraud the United States and
To Evade Currency Reporting Requirements)

The Grand Jury charges:

Background

1.   At all times relevant to this Indictment:

    a.  Financial institutions within the United States are required by law to file a Currency Transaction Report ("CTR") with the Internal Revenue Service ("IRS") for every deposit, withdrawal, exchange of currency or other payment or transfer, in United States currency in excess of $10,000 in which they are involved.  Furthermore, multiple currency transactions are considered a single transaction if the financial institution has knowledge that the transactions are by or on behalf of any person and result in either cash in or cash out totaling more



than $10,000 during any one business day to any person.  Under the law, check-cashing companies are considered financial institutions under the applicable law and thus are required to file CTRs.

b.  Financial institutions are required to include on the CTR the name, address, and method of identification of the "transactor," the individual conducting the transaction; the name, address and method of identification of the "owner," the individual or entity on whose behalf the transaction is being conducted; the amount of the transaction; and, information concerning the nature of the transaction.  CTRs are intended to reveal the identity of both the person who conducted the transaction and the person or entity for whom the transaction was conducted.

c.  It is unlawful to file CTRs that intentionally falsify the identity of the transactor, the identity of the owner, or the nature of the transaction.  It is also unlawful to "structure" a transaction in currency for the purpose of evading the requirement that a financial institution file a CTR with the Government.  "Structuring" includes the practice of subdividing an amount of currency in excess of $10,000 into amounts of $10,000 or less and then conducting separate transactions in currency to evade the requirement of filing a CTR.

d.  A co-conspirator not charged herein as a

defendant ("CC-1") was a check broker operating an unlicensed money transmitting business in New York State, wherein CC-1 would charge customers a fee for cashing the customers' checks.  CC-1 cashed checks on behalf of CC-1's customers at the Money Spot Inc. and Dependable Check Cashing.

<u>The Conspiracy</u>

2.   From in or about 2008 through in or about May 2012, in the Southern District of New York and elsewhere SAMUEL GOLDBERGER, a/k/a "Benzi," and JUDAH YABLONSKY, a/k/a "Yidle," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate the currency reporting laws of the United States, in violation of Title 31, United States Code, Sections 5324(a).

<u>The Objects of the Conspiracy</u>

3.   It was a part and object of the conspiracy that SAMUEL GOLDBERGER, a/k/a "Benzi," and JUDAH YABLONSKY, a/k/a "Yidle," the defendants, and others known and unknown, willfully and knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations prescribed under that section, would and did structure and assist in structuring, and attempt to structure and assist in structuring, transactions with one and more domestic

financial institutions in order to evade the required filing of a
CTR, while violating other laws of the United States and as part
of a pattern of any illegal activity involving more than $100,000
in a 12-month period, in violation of Title 31, United States
Code, Sections 5324(a)(3) and (d)(2).

4.    It was a further part and object of the conspiracy
that SAMUEL GOLDBERGER, a/k/a "Benzi," and JUDAH YABLONSKY, a/k/a
"Yidle," the defendants, and others known and unknown, willfully
and knowingly, and for the purpose of evading the reporting
requirements of Title 31, United States Code, Section 5313(a) and
the regulations prescribed under that section, would and did
cause and attempt to cause domestic financial institutions, to
wit, YABLONSKY caused the entity Dependable Check Cashing, and
GOLDBERGER caused the entity The Money Spot Inc., to file reports
required under Title 31, United States Code, Section 5313(a) and
the regulations prescribed under that section, that contained
material omissions and misstatements of fact, while violating
other laws of the United States and as part of a pattern of any
illegal activity involving more than $100,000 in a 12-month
period, in violation of Title 31, United States Code, Sections
5324(a)(2) and (d)(2).

5.    It was a further part and object of the conspiracy
that SAMUEL GOLDBERGER, a/k/a "Benzi," and JUDAH YABLONSKY, a/k/a
"Yidle," the defendants, and others known and unknown, willfully

- 4 -

and knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations prescribed under that section, would and did cause and attempt to cause domestic financial institutions, to wit, YABLONSKY caused the entity Dependable Check Cashing, and GOLDBERGER caused the entity The Money Spot Inc., to fail to file reports required under Title 31, United States Code, Section 5313(a), while violating other laws of the United States and as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Sections 5324(a)(1) and (d)(2).

<u>Means and Methods of the Conspiracy</u>

6. Among the means and methods by which SAMUEL GOLDBERGER, a/k/a "Benzi," and JUDAH YABLONSKY, a/k/a "Yidle," the defendants, and others known and unknown, would and did carry out the conspiracy were the following:

a. YABLONSKY, as the manager of Dependable Check Cashing, and GOLDBERGER, as Vice President/Compliance Officer of The Money Spot Inc., permitted individuals acting as check brokers to cash third-party checks made out to shell companies at their respective check cashing facilities. YABLONSKY and GOLDBERGER provided the check brokers with the names of shell companies to use as payees on checks. YABLONSKY and GOLDBERGER then charged the check brokers a fee, at times in excess of 2%,

to cash the third-party checks.

        b.    GOLDBERGER and YABLONSKY instructed and permitted check brokers to structure currency transactions by cashing multiple checks worth over $10,000 in one day, providing that check broker with United States currency in excess of $10,000, and then depositing the checks received from the check broker over a number of days or cashing the checks through unlicensed check cashers or business entities.

        c.    GOLDBERGER and YABLONSKY instructed and permitted check brokers to cash checks made payable to shell companies and falsely recorded on CTRs that the transaction was conducted on behalf of the shell companies rather than the payors, i.e., the true customers.  YABLONSKY caused the entity Dependable Check Cashing, and GOLDBERGER caused the entity The Money Spot Inc., to falsely report information on the CTRs so that any audit would not reveal that the payors had received cash substantially in excess of $10,000.  YABLONSKY and GOLDBERGER were aware that this practice permitted the payors to evade paying incoming taxes by claiming phony business expenses to these shell companies.

        d.    YABLONSKY caused the entity Dependable Check Cashing, and GOLDBERGER caused the entity The Money Spot Inc., to file false CTRs which purposefully misstated the transactor or owner of the transactions, knowing that the individuals

- 6 -

identified had no actual involvement in the transactions.

<u>Overt Acts</u>

7.   In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about August 3, 2011, GOLDBERGER cashed two checks he received from CC-1, totaling approximately $13,170. Both checks were made out to a shell company ("Shell Company-1"). GOLBERGER provided CC-1 with $12,775 in cash and no CTR was filed to reflect that.

b.   On or about August 4, 2011, GOLDBERGER cashed two checks provided by CC-1, which contained no payees, and gave CC-1 approximately $31,020 in cash.   Another shell company ("Shell Company-2") was later filled in as the payee on both checks.   No CTR was filed to report that GOLDBERGER gave CC-1 cash in excess of $10,000 on the aforementioned date.

c.   On or about August 4, 2011, GOLDBERGER cashed five checks provided by CC-1, two of which contained no payees, and gave CC-1 approximately $21,448 in cash.   Another shell company ("Shell Company-3") was later filled in as the payee on the two checks.   No CTR was filed to report that GOLDBERGER gave CC-1 cash in excess of $10,000 on the aforementioned date.

d.   On or about August 18, 2011, GOLDBERGER

- 7 -

cashed five checks, made out to Shell Company-3, and two other
shell companies ("Shell Company-4" and "Shell Company-5"),
provided by CC-1, and gave CC-1 approximately $26,036 in cash.
No CTR was filed to report that GOLDBERGER gave CC-1 cash in
excess of $10,000 on the aforementioned date.

      e.   On or about September 9, 2011, YABLONSKY
structured a transaction with CC-1, cashing approximately 34
checks provided by CC-1, giving CC-1 one cash payment for $7,668
and another for $4,331. No CTR was filed to report that YABLONSKY
gave CC-1 cash in excess of $10,000 on the aforementioned date.

      f.   On or about September 21, 2011, YABLONSKY
cashed three checks made payable to Shell Company-3, provided by
CC-1, and gave CC-1 $14,847 in cash.  No CTR was filed to report
that YABLONSKY gave CC-1 cash in excess of $10,000 on the
aforementioned date.

      g.   On or about March 7, 2012, YABLONSKY cashed
two unendorsed United States Treasury checks, made out to persons
other than CC-1, and provided CC-1 with $12,218 in cash.  A false
CTR was filed by YABLONSKY reporting that CC-1 was both the
"owner" and "transactor" for the transaction.

      (Title 18, United States Code, Section 371.)

COUNT TWO

(Conspiracy To Conduct an Unlicensed Money
Transmitting Business)

The Grand Jury further charges:

8.    From at least in or about 2008 through in or about
May 2012, in the Southern District of New York and elsewhere,
SAMUEL GOLDBERGER, a/k/a "Benzi," JUDAH YABLONSKY, a/k/a "Yidle,"
and SAMUEL ASHKENAZI, a/k/a "Haim Veinberg," a/k/a "Joseph,"
a/k/a "Sam," the defendants, and others known and unknown,
willfully and knowingly, combined, conspired, confederated, and
agreed together and with each other to commit an offense against
the United States, to wit, to violate Section 1960 of Title 18,
United States Code.

9.    It was a part and an object of the conspiracy that
SAMUEL GOLDBERGER, a/k/a "Benzi," JUDAH YABLONSKY, a/k/a
"Yidle,", and SAMUEL ASHKENAZI, a/k/a "Haim Veinberg," a/k/a
"Joseph," a/k/a "Sam," the defendants, and others known and
unknown, would and did conduct, control, manage, supervise,
direct, and own all and part of an unlicensed money transmitting
business, to wit, GOLDBERGER and YABLONSKY cashed checks provided
to them by ASHKENAZI and other check brokers knowing the brokers
were operating unlicensed money transmitting businesses, in
violation of Section 1960 of Title 18, United States Code.

<u>Overt Acts</u>

10.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about August 4, 2011, GOLDBERGER met with CC-1 to cash checks for CC-1's customers.  During this meeting GOLDBERGER told CC-1 that GOLDBERGER would charge CC-1 a fee of 10% to cash CC-1's checks because GOLDBERGER would use another individual to cash the checks.

b.   On or about September 9, 2011, CC-1 provided YABLONSKY with approximately 33 checks, including several medical insurance payment checks, totaling approximately $14,816.

c.   In or about September 2011, YABLONSKY, through Dependable Check Cashing, provided approximately 33 checks to ASHKENAZI for ASHKENAZI to deposit into various commercial bank accounts in Bronx, New York, in order to disguise Dependable Check Cashing's involvement in certain financial transactions.

(Title 18, United States Code, Section 371.)

<u>COUNT THREE</u>
(Conspiracy to Conduct Money Laundering)

The Grand Jury further charges:

11.   From at least in or about 2010, up to and including in or about August 2012, in the Southern District of

New York and elsewhere, SAMUEL GOLDBERGER, a/k/a "Benzi," JUDAH
YABLONSKY, a/k/a "Yidle," and SAMUEL ASHKENAZI, a/k/a "Haim
Veinberg," a/k/a "Joseph," a/k/a "Sam," the defendants, and
others known and unknown, knowingly did combine, conspire,
confederate, and agree together and with each other to violate
Title 18, United States Code, Sections 1956(a)(1)(B)(i) and
1957(a).

        12.   It was a part and an object of the conspiracy that
SAMUEL GOLDBERGER, a/k/a "Benzi," JUDAH YABLONSKY, a/k/a "Yidle,"
and SAMUEL ASHKENAZI, a/k/a "Haim Veinberg," a/k/a "Joseph,"
a/k/a "Sam," the defendants, and others known and unknown,
knowing that the property involved in certain financial
transactions represented the proceeds of some form of unlawful
activity, knowingly would and did conduct and attempt to conduct
such financial transactions affecting interstate and foreign
commerce, which in fact involved the proceeds of a specified
unlawful activity, to wit, health care fraud, and knowing that
such transactions were designed in whole and in part to conceal
and disguise the nature, location, source, ownership, and control
of the proceeds of said specified unlawful activity, in violation
of Title 18, United States Code, Section 1956(a)(1)(B)(i).

        13.   It was a further part and an object of the
conspiracy that SAMUEL GOLDBERGER, a/k/a "Benzi," JUDAH
YABLONSKY, a/k/a "Yidle," and SAMUEL ASHKENAZI, a/k/a "Haim

Veinberg," a/k/a "Joseph," a/k/a "Sam," the defendants, and others known and unknown, within the United States and involving United States persons, in an offense involving and affecting interstate and foreign commerce, knowingly would and did engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, health care fraud, in violation of Title 18, United States Code, Section 1957(a).

<u>Overt Acts</u>

14.   In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about September 9, 2011, YABLONSKY charged CC-1 a 7% fee to cash several medical insurance payment checks provided to YABLONSKY by CC-1.

b.   On or about April 17, 2012, GOLDBERGER provided ASHKENAZI with bank account information which GOLDBERGER and ASHKENAZI then used to deposit approximately 6 checks issued to a health care clinic involved in no-fault insurance fraud.

(Title 18, United States Code, Section 1956(h).)

<u>Forfeiture Allegation with Respect to Count One</u>

15.   As a result of committing the foregoing offense, in violation of 18 U.S.C. § 371, alleged in Count One of this

Indictment,  SAMUEL GOLDBERGER, a/k/a "Benzi," and JUDAH YABLONSKY, a/k/a "Yidle," the defendants, shall forfeit to the United States, pursuant to 31 U.S.C. § 5317, all property, real and personal, involved in the offense or traceable to such property.

<u>Substitute Assets Provision</u>

a.  If any of the property described above as being subject to forfeiture, as result of any act or omission of the defendants,

i.  cannot be located upon the exercise of due diligence;

ii.  has been transferred or sold to, or deposited with, a third party;

iii. has been placed beyond the jurisdiction of the court;

iv.  has been substantially diminished in value; or

v.   has been commingled with other property which cannot be divided without difficulty; it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Section 371;
Title 21, United States Code, Section 853(p);
Title 31, United States Code, Sections 5317, 5324)

- 13 -

## Forfeiture Allegation with Respect to Count Two

16.   As the result of committing the illegal money transmitting offense alleged in Count Two of this Indictment, in violation of 18 U.S.C. § 371,  SAMUEL GOLDBERGER, a/k/a "Benzi," JUDAH YABLONSKY, a/k/a "Yidle," and SAMUEL ASHKENAZI, a/k/a "Haim Veinberg," a/k/a "Joseph," a/k/a "Sam," the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense.

## Substitute Assets Provision

a.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

i.   cannot be located upon the exercise of due diligence;

ii.  has been transferred or sold to, or deposited with, a third party;

iii. has been placed beyond the jurisdiction of the court;

iv.  has been substantially diminished in value; or;

v.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.

- 14 -

§ 853(p), to seek forfeiture of any other property of said

defendants up to the value of the above forfeitable property.

> (Title 18, United States Code, Sections 981 and 1960;
> Title 21, United States Code, Section 853(p);
> Title 28, United States Code, Section 2461.)

### Forfeiture Allegation with Respect to Count Three

17.   As a result of committing the money laundering

offense alleged in Count Three of this Indictment, SAMUEL

GOLDBERGER, a/k/a "Benzi," JUDAH YABLONSKY, a/k/a "Yidle," and

SAMUEL ASHKENAZI, a/k/a "Haim Veinberg," a/k/a "Joseph," a/k/a

"Sam," the defendants, pursuant to Title 18, United States Code,

982(a)(1), shall forfeit to the United States of America any

property, real and personal, involved in the offense, and any

property traceable to such property, including, but not limited

to a sum of money representing the amount of proceeds involved in

the offense.

### Substitute Assets Provision

a.   If any of the above-described forfeitable

property, as a result of any act or omission of the defendants:

> i.   cannot be located upon the exercise of due
> diligence;
> ii.  has been transferred or sold to, or deposited
> with, a third party;
> iii. has been placed beyond the jurisdiction of
> the court;

iv.   has been substantially diminished in value;

or;

v.   has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of said

defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982(a)(1) and Title 21,
United States Code, Section 853.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

- 16 -

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

SAMUEL GOLDBERGER, a/k/a "Benzi,"
JUDAH YABLONSKY, a/k/a "Yidle," and
SAMUEL ASHKENAZI, a/k/a "Haim Veinberg,"
a/k/a "Joseph," a/k/a "Sam,"

Defendant.

INDICTMENT

S3 11 Cr.

(Title 18 United States Code,
Sections 371, 1956).

PREET BHARARA
United States Attorney.